IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| nCLOSURES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 9358 |
| | ) | |
| BLOCK AND COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff nClosures, Inc.'s (nClosures) motion for a preliminary injunction. For the reasons stated below, the motion is granted.

BACKGROUND

nClosures alleges that it designed and currently sells certain tablet enclosures, including the Rhino iPad Enclosure (Rhino Enclosure). Tablet enclosures are used in retail stores, classrooms, and other places of business to prevent theft of or damage to tablets. nClosures has allegedly invested more than $300,000 in developing confidential information relating to its tablet enclosures, including product designs, assembly drawings, and summaries relating to the market, competitor pricing, and

1

customer information.

In May of 2011, Greg Carlson (Carlson), the Chief Executive Officer of Defendant Block and Company, Inc. (Block), allegedly approached the founders of nClosures, Daniel McKean (McKean) and Daniel Gorman (Gorman), and proposed that Block and nClosures explore a partnership in the tablet enclosure industry. On May 24, 2011, nClosures and Block allegedly executed a Confidentiality and Non-Disclosure Covenant (NDA), and thereafter nClosures allegedly provided Block with nClosures' confidential information, including designs, market knowledge, manufacturing set-up, solid models, and assembly drawings.

nClosures alleges that Block used nClosures' confidential information to create its own iPad tablet enclosure, the Atrio (Atrio). Block allegedly reiterated that a partnership existed between the parties on several occasions during the period of time that Block was developing the Atrio. On April 13, 2012, after allegedly receiving further assurances from Block regarding the partnership between the two companies, McKean and Gorman allegedly visited Block's principal place of business, and disclosed additional market knowledge to Block. On May 9, 2012, Block allegedly informed nClosures that Block had terminated Carlson, but that Carlson would serve in a transitional role for a period of time. On June 6, 2012, Carlson allegedly indicated to nClosures that Block intended to renegotiate the partnership between the two companies.

On August 1, 2012, Block allegedly launched the Atrio, and on August 13, 2012, David Kaufman (Kaufman), of Block, allegedly informed nClosures that Block

would no longer sell products designed by nClosures, effectively terminating the partnership between the companies. Block allegedly has not shared any of the benefits it has derived from the development and manufacture of the Atrio with nClosures. In addition, Block allegedly continues to sell tablet enclosures to the public that Block represents are Rhino Enclosures, which has allegedly caused customer confusion regarding whether nClosures or Block is the source of such products. nClosures brought the instant action and includes in its amended complaint a fraud claim (Count I), a trade secret misappropriation claim (Count II), a breach of fiduciary duty claim (Count III), a breach of contract claim (Count IV), and an unfair competition claim brought pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq., (Count V). nClosures now moves for a preliminary injunction based upon the breach of contract claim. By agreement of the parties, the evidence before the court relates solely to Block's alleged use of nClosures' confidential designs and manufacturing knowledge.

## DISCUSSION

I. Initial Requirements

A party seeking a preliminary injunction must initially establish: (1) "that absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims," (2) "that traditional legal remedies would be inadequate," and (3) "that its claim has some likelihood of succeeding on the merits."

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the moving party fails to satisfy any of the above elements, the court must deny the motion for a preliminary injunction. *Id.*

      A. Irreparable Harm and Inadequate Remedy at Law

nClosures contends that if a preliminary injunction is not entered, nClosures will suffer irreparable harm and have no adequate remedy at law due to its loss of a head start in the marketplace. A party's loss of status as an initial market entrant with a new design, and its corresponding loss of prospective customers, can constitute irreparable harm to a party. *See QSRSoft, Inc. v. Restaurant Technology, Inc.*, 2006 WL 2990432, at *11 (N.D. Ill. 2006)(stating that "assessing the monetary value of [a plaintiff's] head start in the market would be nearly impossible," and indicating that a plaintiff's inability "to reap the benefits as the initial market entrant . . . make[s] assessing damages difficult"). nClosures has presented evidence that it invested substantial sums of money to develop its products, which include the Rhino Enclosure. (P Memo Ex. A, Par. 8). nClosures has also presented evidence that the tablet enclosure market is relatively young and poised for substantial growth. (P Memo Ex. A, Par. 8, 18).

Block argues that nClosures does not have a head start in the marketplace to protect. In support of its argument, Block contends that nClosures delayed seeking injunctive relief, even though nClosures was aware of Block's development of the Atrio during the first part of 2012, and was aware of the manufacture and sale of the

Atrio since at least August 1, 2012. However, nClosures has presented evidence showing that its delay in bringing the instant action was caused by Block's repeated reassurances that a partnership existed between the parties. (P Memo Ex. 4); (P Reply Ex. 2).

Block also contends that there are already many other companies manufacturing and selling iPad enclosures. However, nClosures has presented evidence showing that the design of the Rhino Enclosure is unique within the industry, and evidence indicating that the Atrio designed by Block is substantially similar to the Rhino Enclosure. (P Memo at 6); (P Memo Ex. 2); (P Reply Ex. 5). Thus, nClosures has adequately shown that it has a head start in the marketplace with respect to the design at issue in this case. In addition, the court notes that the parties contractually agreed in the NDA that "the unauthorized disclosure or use of Confidential Information or any other breach by the Receiving Party . . . of the obligations [in the NDA] [would] result in irreparable injury . . . and shall entitle the Disclosing Party to receive injunctive relief. . . ." (P Memo. Ex 1, Par. 9). Based upon the above, nClosures has shown that, absent a preliminary injunction, nClosures will suffer irreparable harm, and that, consequently, there is no adequate remedy at law.

### B. Likelihood of Success on the Merits

nClosures contends that it has a likelihood of success on the merits with respect to its breach of contract claim. For the purposes of a preliminary injunction

5

motion, as indicated above, the movant need only make a showing of some likelihood of success on the merits. *Girl Scouts*, 549 F.3d at 1086. To succeed on a breach of contract claim under Illinois law, a plaintiff must show "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Kanoski & Associates*, 668 F.3d 446, 452 (7th Cir. 2012)(citation omitted). The NDA provides that "the Confidential Information received . . . shall be used solely for the purposes of engaging in [discussions relative to a potential business relationship] and evaluating" the potential business relationship with respect to iPad enclosures. (P Memo Ex. 1, Par. 2). Block does not dispute the fact that the NDA is a valid and enforceable contract. However, Block argues that nClosures is unlikely to succeed in proving that Block used nClosures' confidential information to design and manufacture the Atrio and that nClosures performed all of its obligations under the NDA.

  Block argues that the design of the Rhino Enclosure is in the public domain and that Block made significant contributions to the design of the product. However, Block does not address nClosures' contention that Block used nClosures' confidential manufacturing knowledge in manufacturing the Atrio, nor does Block offer sufficient evidence to rebut such contentions by nClosures. nClosures contends that in designing and manufacturing the Atrio, Block misused flat files, SolidWorks, and Pro-E Files in breach of the NDA. nClosures has presented sufficient evidence that such confidential information was used by Block to design and manufacture the

Atrio. For example, in meeting notes taken by Carlson, he indicates that the "hinge enclosure family [ ] leveraged off one design element of Rhino design." (P Reply Ex. 4, pg. 3). In addition, one of the Atrio flat files, which is a file used to instruct the equipment that stamps, bends, and cuts the metal for the Atrio, references a part name used solely by nClosures. (Yang Dep, DX 14, pg. 9). Further, there is evidence indicating that the person identified by Block as the sole designer of the Atrio, John Yang (Yang), updated the flats used to produce the Rhino Enclosure on various occasions, and thus may have used or referred to them to design the Atrio flats. (P Reply Ex. 6); (Yang Dep. pg. 23, 35, 42). Yang also testified at his deposition that he was provided information upon which to base the Atrio design, and that he did not know where the information came from. (Yang Dep pg. 64, 82). Further, nClosures has presented evidence that Block changed its manufacturing workflow, software, and equipment based upon confidential information shared by nClosures. (P Memo. Ex A, Par. 12-15). The evidence presented by Block at this juncture, which largely consists of declarations made by Block employees, is not sufficient to overcome the evidence that has been presented by nClosures. In addition, although Block also argues that nClosures may also have breached the NDA by using another manufacturer to produce Rhino Enclosures, Block has not presented sufficient evidence with respect to such a claim. Further, nClosures has presented evidence showing it has been damaged by the alleged breach of the NDA by Block. (P Memo Ex A, Par. 17). Thus, nClosures has shown a reasonable likelihood of success on the merits with respect to its breach of contract claim.

Based upon the above, nClosures has satisfied the three threshold requirements for the motion for preliminary injunction.

II. Balancing Phase

If the moving party satisfies all of the initial requirements for a preliminary injunction, the court must "proceed[] to the balancing phase of the analysis." *Girl Scouts*, 549 F.3d at 1086. During the balancing phase, the court should balance: (1) the potential harm to the parties, (2) the likelihood of success on the merits, and (3) the public interest. *Id.* The court should employ "a sliding scale approach: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (internal quotations omitted)(quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)).

    A. Potential Harm to the Parties

nClosures contends that it will suffer more severe harm if the motion for a preliminary injunction is denied than Block will suffer if the motion is granted. As discussed above, if the motion is denied, nClosures will lose a valuable head start in the tablet enclosure market with respect to the unique design of the Rhino Enclosure. nClosures has presented evidence relating to the significant investment it has made in developing the Rhino Enclosure. In addition, nClosures indicates that it is a young company, and that the manufacture and sale of tablet enclosures is nClosures' sole

8

source of revenue. On the other hand, if the motion is granted, Block will be foreclosed from continuing to market and sell the Atrio pending the resolution of this litigation. However, as nClosures points out, Block will not be foreclosed from pursuing the manufacture and sale of its other products, which are numerous. Based on the above, a consideration of the potential harms to the parties favors granting the motion.

### B. Likelihood of Success on the Merits

As discussed above, nClosures has shown a reasonable likelihood of success on the merits. Further, when the scope of the case expands and evidence is presented relating to Block's alleged misuse of nClosures' confidential information relating to the market, nClosures' breach of contract claim may even be stronger. In addition, as discussed above, the balancing of the potential harms also favors nClosures in this case. Thus, under the sliding scale approach, a grant of the instant motion for a preliminary injunction is warranted.

### C. Public Interest

nClosures argues that public interest weighs in favor of granting the preliminary injunction. It is in the public interest to enforce valid contracts. In addition, it is in the public interest to protect confidential information since such protection encourages design, innovation, and collaboration. Further, any current customers of Block will not be significantly harmed since they can purchase other

tablet enclosures from an alternative source during the pendency of this litigation. Therefore, the public interest favors granting the instant motion. Based upon the above, the motion for a preliminary injunction is granted.

## CONCLUSION

Based on the foregoing analysis, nClosures' motion for a preliminary injunction is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 15, 2013