IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| nCLOSURES INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 12 C 9358 |
| BLOCK AND COMPANY, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff nClosures Inc.'s (nClosures) motion for partial summary judgment and Defendant Block and Company, Inc.'s (Block) motion for summary judgment. For the reasons stated below, nClosures' motion for partial summary judgment is denied, and Block's motion for summary judgment is granted.

## BACKGROUND

nClosures alleges that it designed and currently sells certain tablet enclosures, including the Rhino iPad Enclosure (Rhino Enclosure). Tablet enclosures are used in retail stores, classrooms, and other places of business to prevent theft of or damage to

1

tablets. nClosures has allegedly invested more than $300,000 in developing confidential information relating to its tablet enclosures, including product designs, assembly drawings, and summaries relating to the market, competitor pricing, and customer information.

In May of 2011, Greg Carlson (Carlson), the Chief Executive Officer of Block, allegedly approached the founders of nClosures, Daniel McKean (McKean) and Daniel Gorman (Gorman), and proposed that Block and nClosures explore a partnership in the tablet enclosure industry. On May 24, 2011, nClosures and Block allegedly executed a Confidentiality and Non-Disclosure Covenant (NDA), and thereafter nClosures allegedly provided Block with nClosures' confidential information, including designs, market knowledge, manufacturing set-up, solid models, and assembly drawings.

nClosures alleges that Block used nClosures' confidential information to create its own iPad tablet enclosure, the Atrio (Atrio). Block allegedly reiterated that a partnership existed between the parties on several occasions during the period of time that Block was developing the Atrio. On April 13, 2012, after allegedly receiving further assurances from Block regarding the partnership between the two companies, McKean and Gorman allegedly visited Block's principal place of business and disclosed additional market knowledge to Block. On May 9, 2012,

Block allegedly informed nClosures that Block had terminated Carlson's employment with Block but that Carlson would serve in a transitional role for a period of time. On June 6, 2012, Carlson allegedly indicated to nClosures that Block intended to renegotiate the partnership between the two companies.

On August 1, 2012, Block allegedly launched the Atrio, and on August 13, 2012, David Kaufman (Kaufman) of Block allegedly informed nClosures that Block would no longer sell products designed by nClosures, effectively terminating the relationship between the companies. Block allegedly has not shared any of the benefits it has derived from the development and manufacture of the Atrio with nClosures. In addition, Block allegedly continues to sell tablet enclosures to the public that Block represents are Rhino Enclosures, which has allegedly caused customer confusion regarding whether nClosures or Block is the source of such products.

nClosures brought the instant action and includes in its amended complaint a fraud claim (Count I), a trade secret misappropriation claim (Count II), a breach of fiduciary duty claim (Count III), a breach of contract claim (Count IV), and an unfair competition claim brought pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, (Count V). On December 3, 2012, nClosures filed a motion for preliminary injunction based upon the breach of contract claim (Count IV), and the motion was

granted on January 10, 2013. On June 24, 2013, the parties stipulated to dismiss with prejudice the unfair competition claim (Count V). nClosures now moves for summary judgment on Count I and Count IV, and Block now moves for summary judgment on all remaining counts.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens*

*Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

I.  Fraud Claim (Count I)

nClosures argues in Count I that Block gave a false assurance of partnership, that Block's misrepresentation was intentional, that nClosures relied on Block's assurance of partnership, and that nClosure's reliance was detrimental to nClosures. Block contends that the alleged false assurance was not a statement of fact but rather a statement of opinion, that there is no evidence that Block made assurances knowing they were false at the time, that nClosures was already providing Block with design files, and that nClosures' fraud claim is preempted by the Illinois Trade Secrets Act (ITSA), 765 ILCS 1065/1 *et seq.*

To establish a fraud claim under Illinois law, a plaintiff must prove that: "(1) defendant made a false statement; (2) of material fact; (3) which defendant knew or

5

believed to be false; (4) with the intent to induce plaintiff to act; (5) the plaintiff justifiably relied on the statement; and (6) the plaintiff suffered damage from such reliance." *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000)(quoting *Williams v. Chicago Osteopathic Health Sys.*, 274 Ill. App. 3d 1039 (Ill. App. Ct. 1995)). In establishing a misrepresentation of fact, "[a] 'statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities . . . ordinarily does not constitute an actionable misrepresentation' under Illinois law." *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993)(quoting *Peterson Indus., Inc. v. Lake View Trust and Sav. Bank*, 584 F.2d 166, 169 (7th Cir. 1978)).

nClosures argues that it relied on Block's false assurance of partnership and was deceived into sharing its confidential design and other information without compensation. (P SJ Mem. 12). nClosures points to the statement by Carlson that "there is nothing 'going on or planned' on our side to subvert our partnership," which was made in March 2012. (P Ex. 7), (R PSF Par. 21). However, the undisputed facts show that Block received the alleged confidential information from nClosures in August 2011, approximately seven months prior to the statement being made. (R DSF Par. 16), (P SJ Mem. 8). Therefore, nClosures could not have relied on Carlson's statement in allowing Block access to nClosures' confidential

6

information, and the required elements of reliance and damages for a fraud claim cannot be satisfied.

Block argues that nClosures cannot meet the elements for an actionable fraud claim based on the undisputed facts. In response to Block's motion for summary judgment, nClosures argues that the statement allowed Block to elicit nClosures' price information and to encourage nClosures to raise its prices. (P Ans. 5). nClosures has not pointed to sufficient evidence to show whether Block received pricing information prior to the statement made by Carlson. However, even assuming that Block received new pricing information after March 2012 and nClosures otherwise acted in reliance on Carlson's statement, nClosures has not provided sufficient facts showing that nClosures was damaged by providing Block with pricing information.

nClosures has failed to point to sufficient evidence to support its motion for summary judgment and to withstand Block's motion for summary judgment on Count I, and Block has pointed to sufficient evidence to support its motion for summary judgment on Count I. Therefore, nClosures' motion for summary judgment on Count I is denied, and Block's motion for summary judgment on Count I is granted.

II. Trade Secret Misappropriation Claim (Count II)

Block argues in Count II that nClosures' design files are not trade secrets and that the Atrio was designed independently and without use of nClosures' design files. A trade secret misappropriation claim under the ITSA requires proof that the information at issue: (1) "was a trade secret," (2) that "was misappropriated," and (3) that "was used in the defendant's business." *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003).

For information to qualify as a trade secret under the ITSA, the information must be: (1) "sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use" and (2) "the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." *Id.*

A. Efforts to Keep Confidential

Block has provided sufficient undisputed evidence showing that the design files were not the subject of reasonable efforts under the circumstances to maintain the design files' secrecy. Therefore, the issue as to whether Block has provided sufficient evidence to support summary judgment on the issue of nClosures' design files being sufficiently secret to derive economic value need not be decided. As to

8

the secrecy requirement, "only in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment, because the answer depends on a balancing of costs and benefits that will vary from case to case and so require estimation and measurement by persons knowledgeable in the particular field of endeavor involved." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991). However, in determining reasonableness, nClosures did not have to undergo "extravagant, productivity-impairing measures to maintain their [design files'] secrecy." *Id.* at 180.

The undisputed facts show that nClosures and Block entered into the NDA in May 2011 "'relative to a potential business relationship with respect to iPad Enclosures,'" (R DSF Par. 8), that nClosures and Block unsuccessfully attempted to negotiate a written manufacturing distribution and licensing agreement, (R DSF Par. 9, 14), that nClosures and Block did business with each other absent any written agreement, (R DSF Par. 17), and that nClosures provided its design files to Block so that Block could manufacture Rhino products for each party to sell to their respective customers. (R DSF Par. 27). The undisputed facts also indicate that nClosures never had a written confidentiality or nondisclosure agreement with nClosures' designer, Ian LeBlanc, (R DSF Par. 28, 70), and that nClosures did not have a signed nondisclosure agreement with Dalsin Industries (Dalsin) when Dalsin was making

9

the original Rhino tablet enclosure in May 2011 (R DSF Par. 72). Further, nClosures fails to put forth sufficient facts to show that it took any reasonable efforts to maintain the secrecy of its design files. nClosures' arguments that it operated on an understanding pursuant to Dalsin policy and industry practice that its confidential information would be maintained in confidence, (R DSF Par. 72), and that "nClosures has never disclosed the Rhino design files to a manufacturer without the understanding that the files are to be maintained in confidence," (P Ans. 8), are not supported by sufficient evidence.

### B. Misappropriation

Block has pointed to sufficient evidence that shows that the requirements for misappropriation under the ITSA are not met. ITSA defines misappropriation as "[d]isclosure or use of a trade secret of a person without express or implied consent by another person who . . . at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Mangren Research and Development Corp. v. National Chemical Company, Inc.*, 87 F.3d 937, 943 (7th Cir. 1996); *see also Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 503 (7th Cir. 2011)(stating that misappropriation "involves the acquisition of a trade secret through improper

means, which requires the breach of a confidential relationship or other duty to maintain secrecy"). In this case, it is undisputed that even though the NDA was executed for purposes of exploring a possible business agreement, no written business agreement was entered. Further, it is undisputed that no other manufacturer operated under a confidentiality agreement with nClosures.

Block has pointed to sufficient evidence that nClosures failed to maintain the secrecy of its design files or meet the requirements for a misappropriation claim under ITSA. Therefore, Block's motion for summary judgment on Count II is granted.

III. Breach of Fiduciary Duty Claim (Count III)

As to Count III which is nClosures's breach of fiduciary duty claim, Block argues, in part, that no partnership or joint venture existed between nClosures and Block because the parties did not share in the profits or losses made on their respective sales. In addition, Block argues that it did not breach any such fiduciary duty, and that the ITSA preempts nClosures' breach of fiduciary duty claim.

The elements for a breach of fiduciary duty claim are: (1) that "a fiduciary duty exists," (2) that "the fiduciary duty was breached," and (3) that "the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723

F.3d 813, 826 (7th Cir. 2013). The existence of fiduciary duties can be established either "as a matter of law in certain relationships including partnerships and joint ventures" or through special circumstances. *Autotech Technology Limited Partnership v. Automationdirect.com*, 471 F.3d 745, 748-49 (7th Cir. 2006).

To establish a partnership under Illinois law, "the plaintiff must show that the parties (1) joined together to carry on a trade or venture, (2) for their common benefit, (3) with each contributing property or services to the enterprise, and (4) having a community of interest in the profits." *Id.* at 748. To establish a joint venture under Illinois law, "the plaintiff must prove (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint ventures; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) a provision for joint sharing of profits and losses." *Id.* To establish special circumstances, "courts consider the degree of kinship between the parties; the disparity in age, health, mental condition, education, and business experience between the parties; and the extent to which the servient party entrusted his business affairs to the dominant party and placed trust and confidence in it." *Id.* at 749.

The record does not indicate that nClosures shared its profits with Block, which is one of the key requirements for establishing a partnership or joint venture.

12

It is undisputed that Block manufactured the products for nClosures at a certain price and nClosures would make a profit on units sold or Block could buy back units at a higher fixed price. However, there was no joint sharing of profits and losses. Moreover, the undisputed facts show that while attempting to negotiate a written agreement, all drafts of that agreement contained a provision acknowledging that nothing in the conduct of either party "shall be deemed to constitute either party an agent, partner, joint venturer or employee of the other." (R DSF Par. 9, 11). Block has pointed to sufficient evidence that no fiduciary duty was created since there was no partnership, joint venture, or special circumstances. Therefore, Block's motion for summary judgment on Count III is granted.

IV. Breach of Contract Claim (Count IV)

nClosures argues in Count IV that Block breached the confidentiality provision of the NDA by using the Rhino design files to develop the Atrio, and that nClosures was damaged by the breach because nClosures missed an opportunity to earn a design fee and was forced to bring the instant action. Block argues that Block did not breach the NDA because the design files were not confidential, and that nClosures' damages claim based on unjust enrichment is insufficient because no actual damages were proven.

The elements for a breach of contract claim under Illinois law are: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS*

*Distributing Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007). As to the damages element, "a plaintiff must establish both 'that he sustained damages . . . [and] he must also establish a reasonable basis for computation of those damages.'" *Id.* at 632 (quoting *Ellens v. Chicago Area Office Fed. Credit Union*, 216 Ill. App. 3d 101 (Ill. App. Ct. 1991)). While the "party claiming damage bears the burden of proving those damages to a reasonable degree of certainty," if the "party establishes that it is entitled to damages but fails to prove the amount of those damages to a reasonable degree of certainty, only nominal damages are recoverable at the discretion of the trial judge." *Id.*; *see also Dynegy Marketing and Trade v. Multiut Corp.*, 648 F.3d 506, 518 (7th Cir. 2011)(stating that "[p]laintiffs are not required to prove damages to the exact cent" but "they must establish a 'reasonable basis for computing damages'")(quoting *Razor v. Hyundai Motor Am.*, 222 Ill.2d 75 (Ill. 2006)). Causation must also be established with reasonable certainty in the context of the alleged damages. *Id.* at 633.

Under Illinois law, a confidentiality agreement will be enforced only "when the information sought to be protected is actually confidential and reasonable efforts were made to keep it confidential." *Tax Track Systems Corp. v. New Investor World, Inc.*, 478 F.3d 783, 787 (7th Cir. 2007). While "[t]he information need not always be kept under lock and key only for the viewing eyes of company officials with the highest security clearance," "[i]f the party seeking to protect its information 'did not think enough of it to expend resources on trying to prevent lawful appropriation of it, this is evidence that it is not an especially valuable interest.'" *Id.* (quoting *Curtis*

14

*1000, Inc. v. Suess*, 24 F.3d 941, 947 (7th Cir. 1994)). Courts evaluate how much effort is reasonable to keep information confidential on a case-by-case basis. *Id.* (citing *Rockwell Graphic Systems*, 925 F.2d at 179). While typically this is an issue for the jury, "[i]n some circumstances . . . it may be readily apparent that reasonable measures simply were not taken." *Id.* (citing *Rockwell Graphic Systems*, 925 F.2d at 179-80).

As previously discussed, nClosures did not have a written confidentiality or nondisclosure agreement with its own designer nor did it have similar agreements with its manufacturers. (R DSF Par. 28, 70, 72). nClosures' argument that it had an "understanding that the files are to be maintained in confidence," (P Ans. 8) is not supported by sufficient evidence. Since Block has provided sufficient undisputed evidence showing that the design files were not the subject of reasonable efforts under the circumstances to maintain the design files' secrecy, the information within the confidentiality agreement is not protected. Therefore, Block's motion for summary judgment on Count IV is granted.

## CONCLUSION

Based on the foregoing analysis, nClosures' motion for partial summary judgment is denied, and Block's motion for summary judgment is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 11, 2013

15